COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-113-CR

 

 

ASHLEY LYN FARMER                                                          APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                               STATE

 

                                              ------------

 

         FROM COUNTY CRIMINAL
COURT NO. 3 OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I.  Introduction








Appellant Ashley Lyn Farmer appeals her
conviction for driving while intoxicated. 
After the jury found Farmer guilty, the trial court assessed her
punishment at 160 days= confinement, probated for
eighteen months,[2]
and a fine of $650.  In three points,
Farmer argues that the evidence is legally insufficient to prove that she
operated a motor vehicle while intoxicated, that the trial court erred by
allowing Trooper Lockhart to testify regarding Farmer=s
out-of-court statement, and that the trial court erred by allowing Trooper
Tomerlin to testify regarding one of Farmer=s
statements of which he allegedly had no personal knowledge.  We will affirm.

II.  Factual Background

The evidence at trial consisted of the testimony
of two Texas Department of Public Safety Troopers and a DVD that contained an
edited version of the arrest video.








Trooper Gerrand Lockhart testified that on July
3, 2005, while he was traveling on Interstate 35 about ten miles outside of
Denton between 2:00 and 2:15 a.m., he noticed a car on the shoulder that had
its hazard lights on.  He testified that
a female appeared to be changing a flat tire on a black Volkswagen Jetta.  He said that Trooper Mark Tomerlin was
traveling with him in a separate vehicle and that they both stopped to see if
the female needed assistance.  Once
Trooper Lockhart stopped, he confirmed that the female was changing a flat tire
on the Jetta and noted that the Jetta was stopped in the middle of the service
road where it would impede traffic and present a safety issue.  He asked the female if she needed assistance,
and she replied that she had a flat tire[3]
and was having trouble using the jack. 
He also asked her name, and she replied AAshley
Lyn Farmer.@ 
Farmer did not state that she had been driving, but she was alone and
advised Trooper Tomerlin that she was coming from Denton and was on her way
home to Van Alstyne. 

While Trooper Lockhart was assisting Trooper Tomerlin
with changing Farmer=s tire, Trooper Lockhart noticed
that Farmer appeared to be intoxicated. 
Trooper Lockhart said that Farmer=s speech
was very slurred and that she had a strong odor of an alcoholic beverage on her
breath, which he could smell as she smoked and talked.  Trooper Tomerlin apparently also noticed the
smell and asked Trooper Lockhart if he could smell alcohol on Farmer, to which
Trooper Lockhart responded Ayes.@  Trooper Lockhart testified that Farmer also
had red, glassy eyes that were almost closed. 
Because Farmer=s eyelids were nearly closed,
Trooper Lockhart checked her driver=s
license to see if this was her normal appearance and found that it was
not.  








Based on these observations, Trooper Lockhart
decided to conduct standardized field sobriety tests on Farmer.  First, Trooper Lockhart attempted to
administer the horizontal gaze nystagmus, but Farmer did not follow his finger;
instead, she kept her eyes straight, started laughing at him, and said, A[W]e just
went over this in class.@ 
With the walk-and-turn test, at first Farmer could not place her right
foot in front of her left without stumbling. 
Then, when she attempted to perform the test, Trooper Lockhart observed
six of the eight clues:[4]  Farmer could not balance in the instructional
phase, she started too soon, she missed the heel to toe, she stepped off the
line, she used her arms for balance, and she turned improperly.  On the one-leg stand, Farmer performed
poorly, in Trooper Lockhart=s
opinion, and exhibited three of the four clues:[5]  she put down her foot, she put her hands
behind her back, and she did not count out loud. 

Based on the totality of the circumstancesCthe
smell of an alcoholic beverage on Farmer=s
breath; her slurred speech; her red, tight eyes; and her performance on the
field sobriety testsCTrooper Lockhart concluded that
Farmer had lost the normal use of her physical and mental faculties due to the
introduction of alcohol.  He therefore
decided that Farmer was intoxicated, arrested her, and placed her in the front
seat of his patrol car.  Once she was
placed in the patrol car, Farmer indicated that she would refuse to provide a
breathalyzer sample. 








When they arrived at the jail, Trooper Lockhart
started to get Farmer out of the patrol car; however, she unbuckled her seat
belt with her hands handcuffed behind her, raised up her feet, and kicked the
door open.  Trooper Lockhart testified
that Farmer started cursing and fighting after she got out of the car.  Farmer then started kicking and pushing
herself back against the wall; all of these actions were captured by the sally
port camera at the jail.  After Farmer
was searched and booked into the jail, she refused to answer the DWI interview
questions. 

Trooper Tomerlin=s
testimony was similar to Trooper Lockhart=s:  he was patrolling with Trooper Lockhart on
July 3, 2005 and noticed a vehicle that had its hazard lights flashing and that
was pulled off the exit ramp of Interstate 35. 
Trooper Tomerlin said that he was primarily concerned with safety
because the vehicle was parked in the middle lane of traffic on the service
road.  So, he parked his patrol car on
the exit ramp to cause cars coming off the interstate to slow down, and Trooper
Lockhart parked his patrol car behind Farmer=s
vehicle to protect her vehicle from oncoming traffic on the service road.  








Trooper Tomerlin testified that he and Trooper
Lockhart walked up to a female changing a tire and that she identified herself
as AAshley
Farmer.@  Trooper Tomerlin said that he went and got a
jack out of his patrol car and after that was primarily concerned with changing
Farmer=s
tire.  When he observed the flat tire, he
noticed that it looked like the tire had struck a curb or guard rail, there
were rub marks on the tire, and a gash or puncture was visible in the
sidewall.  He explained that the puncture
was not caused by a nail; the tire had struck something large that had caused
the tire to come off the wheel.  

Trooper Tomerlin testified that almost
immediately after he and Trooper Lockhart approached Farmer, he noticed that
Farmer=s speech
was extremely slurred and he smelled a strong odor of alcoholic beverage coming
from Farmer.  Trooper Tomerlin stated
that he relayed his observations to Trooper Lockhart that night, including the
fact that Farmer told him she was coming from Denton.  Trooper Tomerlin searched the vehicle and
found keys in the ignition but no alcoholic beverage containers.  Likewise, Trooper Tomerlin testified that no evidence
appeared around the vehicle that would indicate that Farmer was drinking while
she changed the tire.  Trooper Tomerlin
testified that, in his opinion, Farmer was intoxicated that night.  

III.  Legally Sufficient Evidence of Operating A
Motor Vehicle 

While
Intoxicated

 








In her first point, Farmer argues that the
evidence is legally insufficient to prove that she actually operated a motor
vehicle while she was intoxicated. 
Specifically, Farmer points to the fact that there was no evidence that
the Jetta=s engine was running or had been
running before the troopers approached the car, that neither trooper testified
that the vehicle=s hood or engine compartment was
warm, that there was no evidence to show how long the Jetta had been parked in
the access road before the troopers saw it, that the State failed to offer any
evidence that she was the owner of the Jetta, that no witnesses testified that
they saw her operate the Jetta, and that there was no evidence to link her
physical state at the scene of the arrest to her physical state at the time of
the alleged driving. 

In reviewing the legal sufficiency of the
evidence to support a conviction, we view all the evidence in the light most
favorable to the verdict in order to determine whether any rational trier of
fact could have found the essential elements of the crime beyond a reasonable
doubt.  Jackson v. Virginia, 443
U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Hampton v. State, 165 S.W.3d
691, 693 (Tex. Crim. App. 2005).








This standard gives full play to the
responsibility of the trier of fact to resolve conflicts in the testimony, to
weigh the evidence, and to draw reasonable inferences from basic facts to
ultimate facts.  Jackson, 443 U.S.
at 319, 99 S. Ct. at 2789.  The trier of
fact is the sole judge of the weight and credibility of the evidence.  See
Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Margraves v.
State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  Thus, when performing a legal sufficiency
review, we may not re-evaluate the weight and credibility of the evidence and
substitute our judgment for that of the fact-finder.  Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000).  We must resolve any inconsistencies in the
evidence in favor of the verdict.  Curry
v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

In order to sustain a conviction for driving
while intoxicated, the State must show that Farmer (1) drove or operated a
motor vehicle (2) while intoxicated (3) in a public place.[6]  Tex.
Penal Code Ann. ' 49.04(a) (Vernon 2003).  There is no statutory definition of Aoperate,@ but the
Texas Court of Criminal Appeals has held Athat the
evidence is sufficient to show operation of a motor vehicle where the totality
of the circumstances demonstrate that the defendant took action to affect the
functioning of [the] vehicle in a manner that would enable the vehicle=s use.@  Denton v. State, 911 S.W.2d 388, 390
(Tex. Crim. App. 1995).  Although driving
always involves operation of a vehicle, operation of a vehicle does not
necessarily always involve driving.  Id.
at 389.













Concerning Farmer=s
statement that she was on her way home from Denton to Van Alstyne, an accused=s
extrajudicial confession cannot, by itself, establish the essential elements of
the offense.  See Self v. State,
513 S.W.2d 832, 835 (Tex. Crim. App. 1974) (stating that proof of corpus
delicti may not be made by an extrajudicial confession alone).  If there is evidence corroborating the
extrajudicial statement, the extrajudicial statement can be used with the other
evidence to establish the corpus delicti.  Fisher v. State, 851 S.W.2d 298, 302
(Tex. Crim. App. 1993).  The
corroborating evidence need not be sufficient in itself to prove the offense
charged.  Self, 513 S.W.2d at
835.  The evidence is sufficient if the
corroborating evidence joined with the extrajudicial statement permits a
rational finding of guilt beyond a reasonable doubt.[7]  Folk v. State, 797 S.W.2d 141, 144
(Tex. App.CAustin 1990, pet. ref=d).








The following evidence corroborates Farmer=s
admission to Trooper Tomerlin that she was on her way home from Denton to Van
Alstyne.  Trooper Lockhart and Trooper
Tomerlin testified that they stopped to help Farmer about ten miles outside of
Denton.  The Jetta with the flat tire was
in the middle of the Interstate 35 service road.  The troopers noted that the Jetta=s hazard
lights were flashing and that the keys were in the ignition.  Although the troopers remained at the scene
for an extended period of time, no one besides Farmer approached the
Jetta.  This evidence sufficiently
corroborates Farmer=s extrajudicial admission that
she was on her way home from Denton and was therefore operating a motor
vehicle.  See Layland v. State,
144 S.W.3d 647, 651-52 (Tex. App.CBeaumont
2004, no pet.) (holding that State established corpus delicti of offense
of DWI where defendant drove her automobile into a ditch, the defense conceded
that defendant was intoxicated within an hour of the latest time she could have
been driving, and defendant abandoned car while it was still running); Patterson
v. State, No. 12-05-00429-CR, 2006 WL 1918685, at *3 (Tex. App.CTyler
July 12, 2006, no pet.) (mem. op.) (not designated for publication) (holding
there was sufficient evidence to establish corpus delicti of offense of
DWI where there was no evidence that there was another occupant in appellant=s
vehicle, the vehicle was registered in his name, and no companion appeared on
the videotape).  We therefore hold that
Farmer=s
statement may be used in establishing the corpus delicti in this case.








Although the record does not establish the
precise time that Farmer pulled off the road, the evidence demonstrated that
the troopers found her approximately ten miles outside Denton between 2:00 and
2:15 a.m.  Farmer told the troopers that
she was on her way home from Denton.  The
troopers did not find any alcoholic beverage containers in Farmer=s
vehicle or around the parked vehicle. 
But Farmer nonetheless failed the field sobriety tests.  Thus, a rational trier of fact could have
found that Farmer was intoxicated while she operated her vehicle driving from
Denton to the middle of the service road outside Denton where she was found.








Considering Farmer=s
statement along with the other evidence presented, all in the light most
favorable to the verdict, we hold that the evidence indicates that Farmer,
while intoxicated, drove the Jetta or operated the Jetta by exerting personal
effort upon it to affect its functioning in a manner that would enable its
use.  See Denton, 911 S.W.2d at
389.  Thus, the evidence is legally
sufficient to demonstrate that Farmer was operating her car while intoxicated.[8]  See Zavala v. State, 89 S.W.3d 134,
135-36, 140 (Tex. App.CCorpus Christi 2002, no pet.)
(holding evidence legally sufficient to establish that appellant actually drove
motor vehicle while intoxicated where appellant admitted to officer that he had
been run off the road by a car, failed the HGN test, car had four flat tires,
and no one else was at scene; court made this holding despite facts that
vehicle was not running when officer arrived, officer did not remember if keys were
in vehicle, appellant was not in vehicle, and officer did not see appellant
driving or hear from anyone who saw appellant driving); see also Young v.
State, No. 02-04-00437-CR, 2005 WL 1654763, at *3 (Tex. App.CFort
Worth July 14, 2005, no pet.) (mem. op. on reh=g) (not
designated for publication) (holding that evidence was legally sufficient to
convict appellant of DWI where he failed field sobriety tests, was seen at the
location of the wreck, and was the only person who could have been driving the
truck that was parked in the opposite direction on the shoulder of the
freeway); Ellis v. State, No. 05-04-00059-CR, 2005 WL 532457, at *3
(Tex. App.CDallas Mar. 8, 2005, no pet.)
(mem. op.) (not designated for publication) (holding that evidence was legally
sufficient to support DWI conviction where defendant was found standing alone
next to the vehicle that had hit a cement bridge support, and she smelled of
alcohol, had red, glassy eyes, and her speech was slurred).  We overrule Farmer=s first
point.

IV.  Trial Court Properly Admitted Testimony

A.     Trooper Lockhart=s
Testimony of Farmer=s
Extrajudicial Admission








In her second point, Farmer claims that the trial
court erred by overruling her hearsay objection to Trooper Lockhart=s
testimony of Tropper Tomerlin=s
out-of-court statement concerning Farmer=s
operation of the vehicle.  Specifically,
Farmer complains that Trooper Lockhart was allowed to testify over objection
that Farmer Aadvised Trooper Tomerlin that
she was coming from Denton on her way home.A 

A trial court=s decision to
admit or exclude evidence is afforded a great deal of discretion; thus, we
review a trial court=s ruling on admissibility or exclusion of evidence
under an abuse of discretion standard.  See
Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); Hall v. State,
13 S.W.3d 115, 120 (Tex. App.CFort Worth 2000) (applying abuse of discretion
standard to chain of custody issue), pet. dism'd, improvidently granted,
46 S.W.3d 264 (Tex. Crim. App. 2001).  We
will uphold a trial court=s evidentiary ruling if it is reasonably supported by
the record and is correct under any theory of applicable law.  Martin v. State, 173 S.W.3d 463, 467
(Tex. Crim. App. 2005); see Cantu v. State, 842 S.W.2d 667, 682 (Tex.
Crim. App. 1992), cert. denied, 509 U.S. 926 (1993).








A statement is not hearsay if the statement is
offered against a party and is the party=s own
statement in either an individual or representative capacity.  Tex.
R. Evid. 801(e)(2)(A) (Vernon 2003). 
ARule
801(e)(2)(A) plainly and unequivocally states that a criminal defendant=s own
statements, when being offered against him, are not hearsay.@  Trevino v. State, 991 S.W.2d 849, 853
(Tex. Crim. App. 1999).  A party=s own
statements are not hearsay, and they are admissible on the logic that a party
is estopped from challenging the fundamental reliability or trustworthiness of
his own statements.  Id.

Although Farmer complains that Trooper Lockhart
testified to what Farmer told Trooper Tomerlin, Trooper Lockhart was later
asked, ADid she
indicate to you that night that she had been driving?@
[Emphasis added.]  Trooper Lockhart
replied, AShe didn=t state
that she was driving, but she said that she was coming from Denton on the way
home.@  This later statement came in without
objection.  Because neither statement
qualifies as hearsay and because the complained of admission came in later
without objection, we cannot say that the trial court erred by admitting this
testimony.  See Tex. R. Evid. 801(e)(2)(A); see also
Tex. R. App. P. 33.1(a)(1).  We overrule Farmer=s second
point.

B.     Trooper Tomerlin=s
Testimony of Farmer=s
Operation of Vehicle

In her third point, Farmer contends that the
trial court erred by overruling Farmer=s
objection to Trooper Tomerlin=s
testimony of Farmer=s statement concerning her
operation of the vehicle.  Farmer
specifically contends that Trooper Tomerlin=s
testimony should not have been admitted because he repeatedly stated at trial
that he had no recollection of any statements made by Farmer at the time of the
incident.  








As mentioned above, we review a trial court=s ruling on admissibility or exclusion of evidence
under an abuse of discretion standard and will uphold a trial court=s evidentiary
ruling if it is reasonably supported by the record and is correct under any
theory of applicable law.  See Guzman,
955 S.W.2d at 89; Hall, 13 S.W.3d at 120; see also Martin, 173
S.W.3d at 467.

Testimony by a witness to facts of which he has
no knowledge is hearsay; and the mere existence of writings, somewhere, whether
business records or not, does not change the hearsay character of that
testimony.  Lumpkin v. State, 524
S.W.2d 302, 305 (Tex. Crim. App. 1975); see also Tex. R. Evid. 602 (requiring witness to have personal
knowledge to testify).  Memory may be
refreshed by business records as well as by other means.  Lumpkin, 524 S.W.2d at 305.  In such event, however, with a refreshed recollection
the witness is testifying to facts of which he has personal knowledge.  Id.








In this case, we have reviewed the record from
both the suppression hearing and the trial before the jury.  The review of the record as a whole
demonstrates that Trooper Tomerlin recalled overhearing Farmer tell Trooper
Lockhart where she was coming from and that he recalled having a conversation
with Farmer but could not remember the exact words.  Thereafter, Trooper Tomerlin testified
several times without objection that Farmer told him that she was coming from
Denton.  Consequently, Trooper Tomerlin
demonstrated that he had personal knowledge of the statements to which he
testified.  See Tex. R. Evid. 602.  Therefore, we hold that the trial court did
not abuse its discretion by admitting Trooper Tomerlin=s
testimony regarding Farmer=s
statement that she was going home from Denton. 
We overrule Farmer=s third point.

V.  Conclusion

Having overruled each of Farmer=s three
points, we affirm the trial court=s
judgment.

 

SUE
WALKER

JUSTICE

 

PANEL A: CAYCE, C.J.; DAUPHINOT and WALKER, JJ.

DO NOT PUBLISH

Tex.
R. App. P.
47.2(b)

 

DELIVERED: December 28, 2006

 

 











[1]See Tex. R. App. P. 47.4.





[2]As a condition of
probation, the trial court ordered Farmer to serve thirty days= confinement in the
Denton County Jail. 





[3]Trooper Lockhart
testified that Farmer=s tire had a puncture in
the sidewall, indicating that the side of the tire had possibly struck a curb. 





[4]Trooper Lockhart
testified that exhibiting two clues is the Adecision point,@ indicating intoxication.






[5]Again, Trooper Lockhart
testified that only two clues are required to indicate intoxication. 





[6]In her brief, Farmer does
not dispute that she was intoxicated nor that she was in a public place at the
time the troopers found her attempting to change her car tire.  Therefore, we focus our analysis on whether
legally sufficient evidence exists that she was operating a vehicle.





[7]The jury charge in this
case provided that 

 

You are instructed that
under our law[,] the State may not establish[] the corpus [delicti,] to
wit:  driving the motor vehicle[,] solely
by the extrajudicial admissions of the defendant.  However, proof of the corpus delicti need not
be made independent of an extrajudicial admission.  If there is some evidence corroborating the
admission, the admission may be used to aid in the establishment of the corpus
delicti.  The corroborating evidence is
sufficient if it permits a rational finding of guilt, beyond a reasonable
doubt, when joined with the extrajudicial admission.

 

You are instructed that the admission of
the defendant, Ashley Farmer[,] that she was driving the motor vehicle and/or
she was coming from Denton [cannot] be used against her unless the State of
Texas proves through independent evidence corroborating the admission that she
was the driver of the vehicle.  Now,
bearing in mind if you find from the evidence beyond a reasonable doubt that on
the occasion in question that the State of Texas has failed to corroborate the
extrajudicial admission in conjunction with independent evidence that the
Defendant, Ashley Lyn Farmer[,] was driving the motor vehicle and/or she was
coming from Denton on the day in question or you have a reasonable doubt
thereof, you will disregard the admissions of the defendant and all evidence
obtained thereof and you will acquit the Defendant and say by your verdict not
guilty. 





[8]We have reviewed the
trial court=s comments during the
charge conference related to the sufficiency of the evidence and note that they
are not evidence.